By the Court, Robertson, Ch. J.
In a case of this kind, where the sympathies of jurors are so apt to be drawn away from the 'Consideration of the principles which should govern the liability of any one who may be the original cause, -however remote or unwillingly, of an injury, a -full opportunity should be given to the party sought to be charged, to show acts of caution and good faith on his part. The learned justice before whom this action was tried, apparently upon that ground, instructed the jury “to consider whether, under the circumstances, the extent-to which the explosive nature of the compound had been -deteriorated by reason of wet and damp, and the ground which both these parties had for believing it was not explosive, there was carelessness and negligence on *487 the part of Monaghan in the throwing it out of the cart into the street, or in carrying it in such a manner that portions of it could be jolted out of the cart into the street.” Under that instruction the jury, guided only by their own knowledge, would he likely to be governed entirely by the fact that the compound had been gunpowder and did explode, and find, therefore, that due care was not taken, because the defendant did not discover its explosive character. But I do not think it a matter of common' every day knowledge, that' gunpowder, submitted to the treatment to which that had been, in the condition that that in question was, was explosive. The can had originally been, for a time, submerged under water, after it'was thrown overboard from a vessel, and had again been wet in the plaintiff’s store by letting water run over it and into a hole in its side," a month previous to the accident, and it then became apparently so hard and solid externally, that the pieces into which it was broken resembled coke, although internally it might have been damp. Jurors might have different degrees of experience in regard to the effect of water on gunpowder, and some, perhaps, none at all as to the explodability of powder submitted to such a process and treatment, as it was not matter of common knowledge that it would explode, and persons employed in using powder had more occasion than any of the jurors to know, by experiment, the effect on powder of such wetting, and how far there might be reason to believe it had lost its explosive character. If so, it was the duty of the defendant'to have ascertained the risk run in transporting such powder through the ■ streets, by consulting such experts, as well as by making experiments himself. Undoubtedly a great many more precautions might have been taken to destroy the substance in question than were taken, but the question is, considering the risk to be run, were as many taken as *488 would have been taken by a man of ordinary prudence to prevent harm, and one of those, undoubtedly, would have been consulting experts as to the risk to be run. I think, therefore, the offer of the defendant’s counsel to show that the defendant “ submitted the powder for examination to experts, to those persons who were familiar with the use of powder in blasting, and that he was told by them that it was useless for any explosive purposes, and that his action subsequently was governed by that,” was relevant, and ought to have "been admitted.
For that reason, I think the judgment should be reversed, and a new trial had, with costs to abide the event.